IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| CAILE NOBLE,<br><br>    Petitioner,<br><br><br><br><br>    vs.<br><br><br>UNITED STATES OF AMERICA,<br><br><br>    Respondent. | MEMORANDUM DECISION AND ORDER DENYING AND DISMISSING PETITIONER'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE UNDER 28 U.S.C. § 2255<br><br><br><br><br>Civil Case No. 2:07-CV-158 TS<br>Criminal Case No. 2:03-CR-88 TS |

This matter is before the Court on Petitioner's Motion to Vacate, Set Aside, or Correct his Federal Sentence, pursuant to 28 U.S.C. § 2255. Petitioner is proceeding *pro se* in this matter. The Court, having considered the motion and pleadings, having reviewed the file, and being otherwise fully informed, will deny Petitioner's § 2255 Motion, as set forth more fully below.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

On March 19, 2003, Caile Noble ("Petitioner") was charged in a two-count Superceding Indictment.[1]  Count I alleged possession with intent to distribute five grams or more of actual methamphetamine in violation of 21 U.S.C. § 841(a)(1) and punishable pursuant to 21 U.S.C. § 841(b)(1)(B).  Count II alleged possession with intent to distribute fifty grams or more of actual methamphetamine in violation of 21 U.S.C. § 841(a)(1) and punishable pursuant to 21 U.S.C. § 841(b)(1)(A).

On February 27, 2004, the Court denied Petitioner's Motion to Suppress evidence.

On September 9, 2004, Petitioner appeared before the Court for a change of plea hearing. Petitioner agreed to plead guilty to Count I of the Indictment.  In exchange, the government agreed to dismiss Count II of the Indictment, grant a three-level reduction for acceptance of responsibility, and to recommend a low-end sentence.  The Statement in Advance of Plea (SAP)[2] also contained an appeal waiver.

During the plea colloquy, Petitioner was placed under oath.  The Court informed Petitioner that the penalty for "a conviction of 21 U.S.C. § 841(a)(1) is a minimum of five years, and a maximum of forty years" and/or a fine.  The Court asked: "Has anyone promised you something that is not contained in the plea agreement?" Petitioner responded: "No, sir."[3]

---

[1]Case No. 2:03-CR-88 TS (Criminal Case), Docket No. 10.  References to matters docketed in the criminal case will be so identified.  Otherwise the docket number refers to matters filed in this civil case.

[2]Criminal Case, Docket No. 69.

[3]Docket No. 5, Ex. A (transcript of change of plea hearing) at 18-19.

The Court had the attorney for the government outline the entire plea agreement.  Petitioner

agreed that it accurately reflected the terms of the plea agreement as he understood it.  Petitioner

signed the plea agreement.   That Plea Agreement stated as follows:

> Fully understanding my limited right to appeal my sentence, as explained above, and
> in consideration of the concessions and/or commitments made by the United States
> in this plea agreement, I knowingly, voluntarily, and expressly waive my right to
> appeal any sentence imposed upon me, and the manner in which the sentence is
> determined, on any of the grounds set forth in 18 U.S.C. § 3742, except I do not
> waive my right to appeal a sentence (1) above the maximum penalty provided in the
> statute of conviction, and (2) a upward departure from the final sentencing guideline
> range determined by the Court.
>
> I also knowingly and voluntarily waive my right to challenge my sentence, and the
> manner in which the sentence is determined, in any collateral review motion, writ or
> other procedure, including but not limited to a motion brought under 28 U.S.C. §
> 2255.
>
> * * *
>
> The Government agrees to recommend sentencing at the low end of the guideline
> range found applicable.
>
> * * *
>
> No threats or promises of any sort have been made to me to induce me or to persuade
> me to enter this plea
>
> No one has told me that I would receive probation or any other form of leniency
> because of my plea.
>
> I have discussed this case and this plea with my lawyer as much as I wish to.
>
> I am satisfied with my lawyer
>
> * * *
>
> I have no mental reservations concerning the plea.[4]

---

[4]Criminal Case, Docket No. 69 (Plea Agreement) at 3 and 5-6.

The Court continued:

THE COURT: Have you discussed the Sentencing Guidelines with [defendant's counsel]?

MR. NOBLE: Yes, Your Honor.

THE COURT: Do you understand that the court will not be able to determine what guideline range applies to you until after a presentence report has been compiled by the probation office?

MR. NOBLE: Yes, Your Honor.

THE COURT: And do you understand, Mr. Noble, that the sentence that I might impose upon you may be different from what you expect it to be?

MR. NOBLE:  Yes, Your Honor.

THE COURT: And this is very important, Mr. Noble, once this Court has accepted your guilty plea, you will remain bound by it and you will not be allowed to withdraw it, even if the sentence that I impose upon you is more severe than you expect.  Do you understand that?

MR. NOBLE: Yes, Your Honor.[5]

At the conclusion of the hearing, the Court ascertained that Petitioner fully understood his rights, and knowingly and voluntarily waived them and accepted his guilty plea.

A presentence report (PSR) was prepared.  The PSR set forth Petitioner's criminal history, which placed him in a criminal history category of VI.  Based on Petitioner's criminal history, the PSR recommended application of the eight-level career offender enhancement under U.S.S.G. §4B1.1.  Without a career offender enhancement, Petitioner's total offense level would have been

---

[5]Civil Case, Docket No. 5, Ex. A (transcript of change of plea hearing) at 18-19.

23 and his guideline range would have been 92 to 115 months.  With the enhancement, his offense level was 31 and his guideline range was 188 to 235.[6]

Petitioner's counsel filed an objection to the PSR asserting that under the then-recent *Blakely*[7] case, the court was prevented from enhancing Petitioner's sentence under §4B1.1 because application of that enhancement required judicial findings of facts "beyond the mere *presence* of prior convictions."[8]  Because he asserted such enhancement on judge-found facts was barred by *Blakely*, Defendant's counsel argued the enhancement could not be applied absent its inclusion in the terms of the plea agreement.  Defendant's counsel also argued that because sentencing case law was unsettled by *Blakely*, the rule of lenity required that the enhancement not be applied.

Between the change of plea hearing and the sentencing hearing, the Supreme Court applied its *Blakely* ruling to the federal sentencing guidelines in *United States v. Booker*.[9]  Petitioner filed a memorandum[10] arguing, among other things, that he pleaded thinking under *Blakely* that the Court could not enhance his sentence based on judicially determined facts. Defendant also argued that under *Booker*, the Court could exercise discretion and consider a sentence without the career enhancement.

---

[6]The three-level acceptance of responsibility applied to each guideline range.

[7]*Blakely v. Washington*, 124 S.Ct. 2531 (2004).  At Petitioner's request, the sentencing hearing had been postponed in anticipation of the ruling.  Criminal Case, Docket No. 72.

[8]Criminal Case, Docket No. 70, at 2 (emphasis in original).

[9]543 U.S. 220 (2005).

[10]Criminal Case, Docket No. 76.

5

At the first sentencing hearing held on February 3, 2005, Defendant's counsel again argued against the application of the enhancement under *Blakely/Booker* absent its inclusion in the plea agreement.  Counsel argued that, post-*Blakely* and *Booker*, the Court had discretion to consider whether the enhancement should apply based on what the parties anticipated in their negotiations. Petitioner's counsel noted that the attorney for the government who had negotiated the plea agreement for the government had since left the United States Attorney's office.  He requested an opportunity to have her confirm his representation that a career offender enhancement had not been contemplated during plea negotiations.  The Court noted that Defendant had been informed that the sentence might be different from what he expected and, therefore, what the parties had contemplated might not matter.  However, as the issue of a possible agreement regarding the enhancement was raised on behalf of the Petitioner, the Court continued the hearing to allow Petitioner's counsel to present his position.

The continued sentencing hearing was held on March 14, 2005.  At that continued hearing, the Court allowed presentation of Petitioner's proffer in support of any argument "that there had been an agreement between [Petitioner's counsel] and the then Assistant U.S. Attorney . . . that the status as a career offender would not apply" to Petitioner.[11]

However, there was nothing presented to show that there had ever been any agreement that the career offender enhancement would not be sought or that the enhancement even been mentioned. Instead, the proffer by the government's former counsel was that she had no recollection of talking with Petitioner's counsel about the career offender enhancement at all.  She stated that, in fact, she

---

[11]Docket No. 5, Ex. A at 3.

did not realize that Petitioner was going to be career offender.  She also recounted that, at Petitioner's initial appearance, she thought Petitioner had no criminal history and, as a result, was "quite surprised" at the numbers in his PSR.[12]  The government's former counsel also proffered that when negotiating the plea agreement she had told Petitioner's counsel that she would  be "pleased" with the mandatory minimum of five years (60 months).  She opined that had she known it was a possibility, she would have approached the case differently and spoken to counsel about it.[13]

   It being established that there had been no agreement or understanding regarding the career offender enhancement, Petitioner's counsel then advanced his alternative argument that using the same criminal history to establish a criminal history of VI and as the basis of a career offender enhancement was "double counting."[14]

The Court found that the Petitioner's prior convictions qualified for purposes of §4B1.1 and applied the eight-level career offender enhancement.  After applying the three-level acceptance of responsibility reduction in his offense level, the Court determined that his guideline range was 188 to 235 months and sentenced Petitioner to 188 months, the low end of his guideline range.

Petitioner filed a direct appeal raising two issues.  First, that it was error to apply the career offender enhancement under §4B1.1.  Second, that the government violated the plea agreement by failing to recommend 92 months instead of 188 months.  The government asserted the appeal waiver.

---

[12]*Id.* at 4-5.

[13]*Id*. at 4.

[14]*Id*. at 7.  This argument was also made in Petitioner's brief prior to the hearing.

7

The Tenth Circuit Court of Appeals dismissed Petitioner's appeal as a result of the appeal waiver contained in the Statement in Advance of Plea.[15]

Petitioner filed the instant Motion under 28 U.S.C. § 2255 asserting the following: ineffective assistance of counsel, that the plea agreement binds the government, and that an upward departure is unconstitutional. On his ineffective assistance claim, Petitioner contends his counsel was ineffective because: (1) counsel failed to object to or request a hearing to establish his prior drug convictions beyond a reasonable doubt; (2) counsel coerced him into signing a plea agreement for sixty months based on counsel's agreement with the former counsel for the government; (3) his counsel and the  government's former's counsel were unaware of his prior criminal record; (4) counsel failed to file a motion to dismiss based on a speedy trial violation; (5) counsel failed to object to the conflict of interest or double jeopardy violation raised by the government's former counsel's involvement in his state charges arising from the same facts as the offense of conviction.

## II.   DISCUSSION

"[A] waiver of collateral attack rights brought under § 2255 is generally enforceable where the waiver is expressly stated in the plea agreement and where both the plea and the waiver were knowingly and voluntarily made."[16] In determining the enforceability of such waivers, the Court is to consider "(1) whether the disputed appeal falls within the scope of the waiver of appellate rights; (2) whether the defendant knowingly and voluntarily waived his appellate rights; and (3) whether

---

[15]*United States v. Noble*, 175 Fed. Appx. 185, 189-91 (10th Cir. 2006).

[16]*United States v. Cockerham*, 237 F.3d 1179, 1183 (10th Cir. 2001).

8

enforcing a waiver would constitute a miscarriage of justice."[17]

A.  Scope of Appeal Waiver

As noted above, Petitioner signed a broad waiver of appellate rights, which included the waiver of his "right to challenge [his] sentence, and the manner in which the sentence is determined, in any collateral review motion, writ or other procedure, including but not limited to a motion brought under 28 U.S.C. § 2255."[18]

Not only does this language provide for a clear, express waiver of collateral appeal rights, it also references the exact statutory provision under which this action is brought—§ 2255.  The Court detects no ambiguity whatsoever in the language.  Thus, the claims in Petitioner's Motion fall within the scope of the waiver.

The Tenth Circuit has held that a waiver of post-conviction rights "does not waive the right to bring a § 2255 petition based on ineffective assistance of counsel claims challenging the validity of the plea or the waiver."[19]  Petitioner makes five ineffective assistance of counsel claims.  Only Petitioner's second and third claims challenge the validity of his plea or the waiver.  Therefore, the exception stated in *Cockerham* only applies to those two claims.  Petitioner's remaining claims are within the scope of the waiver.

---

[17]*United States v. Porter*, 405 F.3d 1136, 1142 (10th Cir. 2005) (quoting *United States v. Hahn*, 359 F.3d 1315, 1325 (10th Cir. 2004) (en banc)).

[18]Criminal Case Docket No. 69, at 3.

[19]*Cockerham*, 237 F.3d at 1187.

9

B.      Knowing and Voluntary Waiver

The Tenth Circuit has held that it will "only enforce appeal waivers that defendants enter into knowingly and voluntarily."[20]  In determining whether an appellate waiver is knowing and voluntary, the Court looks to two factors: (1) "whether the language of the plea agreement states that the defendant entered the agreement knowingly and voluntarily,"[21] and (2) whether there was "an adequate Federal Rule of Criminal Procedure 11 colloquy."[22]  Further, the Supreme Court has stated that "the law ordinarily considers a waiver knowing, intelligent, and sufficiently aware if the defendant fully understands the nature of the right and how it would likely apply *in general* in the circumstances – even though the defendant may now know the *specific detailed* consequences of invoking it."[23]

On direct appeal, the Tenth Circuit reviewed "both the plea agreement and the transcript of the change-of-plea hearing, [and was] satisfied that Mr. Noble's waiver of appellate rights was knowing and voluntary."[24]  The Circuit further noted Petitioner did "not argue that the language of the agreement and the Rule 11 colloquy were insufficient in this regard."[25]  Accordingly, the circuit

---

[20]*Hahn*, 359 F.3d at 1328 (citing *United States v. Elliot*, 264 F.3d 1171, 1173 (10th Cir. 2001)).

[21]*Id*. at 1325 (citing *Elliot*, 264 F.3d at 1174 n.1) ("Indeed, the plea agreement, which he signed, stated that [the defendant] 'knowingly and voluntarily waive[d] the right' to appeal.").

[22]*Id*. (internal citations omitted).

[23]*United States v. Ruiz*, 536 U.S. 622, 629-30 (2002) (emphasis in original).

[24]*Noble*, 175 Fed. Appx. at 189.

[25]*Id.*

found Petitioner's plea agreement was enforceable.[26]  On its own independent review, this Court also finds the plea agreement is knowing and voluntary.  First, the Court finds that the language of the plea agreement at issue here expressly states that Petitioner entered into the agreement knowingly and voluntarily.  The language of the appeal waiver states that "[f]ully understanding my limited right to appeal my sentence . . . I knowingly,  voluntarily, and expressly waive my right to appeal any sentence imposed upon me, and the manner in which the sentence is determined" and further that "I also knowingly and voluntarily waive my right to challenge my sentence, and the manner in which the sentence is determined, in any collateral review motion, writ or other procedure, including but not limited to a motion brought under 28 U.S.C. § 2255."[27]

Next, the Court considers whether there was an adequate Rule 11 colloquy conducted on the record between the Court and Petitioner.  The Court notes that Petitioner bears the "burden to present evidence from the record establishing that he did not understand the waiver."[28]  The Court finds that the Court conducted an adequate Rule 11 colloquy.[29]

In addition to the plea colloquy, in the written plea agreement, Petitioner signed his name beneath the following statements, among others: "No threats or promises of any sort have been made to me to induce me or to persuade me to enter this plea;" "No one has told me that I would receive

---

[26]*Id.* at 191.

[27]Criminal Case, Docket No. 69, at 3.

[28]*United States v. Edgar*, 348 F.3d 867, 872-73 (10th Cir. 2003).

[29]Docket No. 5, Ex. A (transcript of change of plea hearing).

probation or any other form of leniency because of my plea;" "I have discussed this case and this plea with my lawyer as much as I wish to;" and "I have no mental reservations concerning the plea."[30]

Considering the above, the Court finds that both Petitioner's plea of guilty and his collateral appeal waiver were "knowingly and voluntarily made."

C.      Miscarriage of Justice

The third prong of the appellate waiver enforcement analysis "requires the court to determine whether enforcing the waiver will result in a miscarriage of justice."[31]

> To prove that enforcement of an appellate waiver would result in a miscarriage of justice, a defendant must establish at least one of four circumstances: (1) reliance by the court upon an impermissible factor such as race in imposition of the sentence; (2) ineffective assistance of counsel in connection with the negotiation of the waiver; (3) the sentence exceeds the statutory maximum; or (4) the waiver is otherwise unlawful and seriously affects the fairness, integrity, or public reputation of judicial proceedings.[32]

Petitioner bears the burden of establishing a miscarriage of justice.[33]

First, there is no evidence that the Court relied upon an impermissible factor.  Second, Petitioner's second and third ineffective assistance of counsel claims allege ineffective assistance in connection with the waiver and will be addressed below.  Third, the sentence issued here did not exceed the statutory maximum.  Finally, the waiver is not otherwise unlawful and does not seriously affect the fairness, integrity, or public reputation of judicial proceedings.

---

[30]Criminal Case, Docket No. 69, at 5.

[31]*Hahn*, 359 F.3d at 1327 (internal citations omitted).

[32]*Porter*, 405 F.3d at 1143 (citing *Hahn*, 359 F.3d at 1327).

[33]*United States v. Anderson*, 374 F.3d 955, 959 (10th Cir. 2004).

The Court finds that this collateral appeal, with the exception of Petitioner's second and third ineffective assistance claims, is within the scope of Petitioner's waiver, that the waiver was knowing and voluntary, and that enforcing the waiver would not result in a miscarriage of justice. Therefore, this Court will enforce Petitioner's waiver.

D.  Ineffective Assistance

As noted, Petitioner brings five ineffective assistance claims. The second and third claims relate to Petitioner's plea and waiver.

The Supreme Court has set forth a two-pronged test to guide the Court in making a determination of ineffectiveness of counsel. "To demonstrate ineffectiveness of counsel, [Petitioner] must generally show that counsel's performance fell below an objective standard of reasonableness, and that counsel's deficient performance was prejudicial."[34]

To successfully claim ineffective assistance then, Petitioner must show two things. First, he must show that Counsel functioned deficiently.[35] "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."[36] Second, he must show that Counsel's deficient functioning prejudiced Petitioner's defense.[37] "This requires showing that counsel's errors were so serious as to deprive [Petitioner] of a fair

---

[34]*United States v. Lopez*, 100 F.3d 113, 117 (10th Cir. 1996) (citing *Strickland v. Washington,* 466 U.S. 668 (1984)).

[35]*Strickland*, 466 U.S. at 687.

[36]*Id*.

[37]*Id*.

[proceeding], . . . whose result is reliable."[38]  Without both of these showings, Petitioner may not prevail in arguing that his conviction "resulted from a breakdown in the adversary process that renders the result unreliable."[39]

A court is to review Petitioner's ineffective assistance of counsel claim from the perspective of his counsel at the time he or she rendered the legal services, not in hindsight.[40]  In addition, in evaluating counsel's performance, the focus is not what is prudent or appropriate, but only what is constitutionally compelled.[41]  Finally, there is "a strong presumption that counsel provided effective assistance, and a section 2255 defendant has the burden of proof to overcome that presumption."[42]

Petitioner's second and third ineffective assistance claims allege that his counsel was ineffective at the plea stage.  In particular, Petitioner claims the following:

- counsel coerced him into signing a plea agreement for sixty months based on counsel's agreement(s) with the then counsel for the government; and

- his counsel and the government's counsel were unaware of his prior criminal record.

To prevail on an ineffective assistance of counsel claim in the plea context, the movant must show that his counsel's performance was deficient and that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to

---

[38]*Id.*

[39]*Id.*

[40]*Hickman v. Spears*, 160 F.3d 1269, 1273 (10th Cir. 1998).

[41]*United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984).

[42]*United States v. Kennedy*, 225 F.3d 1187, 1197 (10th Cir. 2002).

trial."[43]   Conclusory allegations of ineffective assistance of counsel are insufficient to overcome

solemn declarations on the part of the petitioner that a guilty plea was knowingly and voluntary.[44]

    1.    *Coerced Plea*

As to the coercion claim, there is absolutely no evidence that there was any agreement

between Petitioner's counsel and the government counsel regarding the sentence.  At most, the

evidence is that the government's counsel remarked to Petitioner's counsel that she would be pleased

with the minimum mandatory.  However, Petitioner was well aware, as he stated under oath, that

"the court will not be able to determine what guideline range applies to [Petitioner] until after a

presentence report has been compiled by the probation office," and that "the sentence that [the Court]

might impose upon [Petitioner ] may be different from what [he] expect[s] it to be."  Petitioner also

stated, in writing and under oath in open court that nothing had been promised him other than that

contained in the written plea agreement.

Petitioner's conclusory statements that he was "coerced" are insufficient to overcome these

solemn declarations showing that his guilty plea was knowing and voluntary.

In a similar case, *United States v. Rhodes*,[45] a direct appeal, the defendant pleaded guilty to

a drug offense but failed to inform his counsel of his extensive criminal history.  Not knowing the

full extent of his client's criminal history, counsel had estimated that the defendant would receive

the five-year statutory minimum. The defendant's criminal history was discovered and listed in the

---

[43]*Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

[44]*Lasiter v. Thomas*, 89 F.3d 699, 702 (10th Cir. 1996).

[45]913 F.2d 839 (10th Cir. 1990).

PSR.  It resulted in a guideline range of 210 to 240 months.  At the sentencing hearing, the defendant sought to withdraw his plea.  Defense counsel stated that if he had known of the extent of his client's prior criminal history, he would have handled the case differently.  The trial court found the plea was voluntary, refused to let the defendant withdraw it, and sentenced him to 210 months.

The defendant appealed, arguing that his attorney's miscalculation of the likely length of his sentence under the guidelines rendered his plea involuntary.  The Tenth Circuit rejected that argument noting that the defendant had correctly been informed of the minimum and maximum penalties and had been fully informed in the plea colloquy that the trial court could not determine the sentencing guideline until after the PSR was prepared.  The Tenth Circuit held: "the fact that the applicable Sentencing Guideline range was higher than defense counsel estimated does not demonstrate a violation of Federal Rule of Criminal Procedure 11."[46]  Accordingly, the Tenth Circuit affirmed the finding that the plea was voluntary despite the large miscalculation of the possible sentence.

The Court finds that counsel was not ineffective in miscalculating the possible sentence.

2.      *No Independent Investigation of Criminal History*

Petitioner also argues that his counsel was ineffective because neither his counsel nor the government's counsel were aware of his prior criminal history.  Petitioner relies on the Eleventh Circuit case *Esslinger v. Davis*,[47] for the proposition that where counsel was completely unaware of the client's prior criminal history, both prongs of the *Strickland* test are met.  However, *Esslinger*

---

[46]*Id*. at 843 (quoting *United States v. Turner*, 881 F.2d 684, 686 (9th Cir. (1989)).

[47]44 F.3d 1515 (11th Cir. 1995).

does not apply to this case.  In *Esslinger*, a habeas case under 28 U.S.C. § 2254, the Eleventh Circuit examined a state court sentence imposed under Alabama's habitual felon statute.  Under that statute, the minimum sentence was ninety-two years.  The *Esslinger* petitioner's counsel failed to inform the Alabama state court at the plea colloquy that the petitioner had any prior felony and, therefore, the Court erroneously informed the petitioner that the minimum sentence he would receive would be ten years and the maximum would be life.  In fact, the *Esslinger* petitioner's counsel believed the petitioner had one prior sentence which would have required a minimum sentence of fifteen years with the possibility of a suspended sentence and probation.  The counsel did not investigate and determine that his client actually had two prior felonies, which resulted in ninety-two year minimum sentence under the habitual felon statute.  Although the Eleventh Circuit found ineffective assistance on those unusual facts, it was also careful to note:

> We do not hold that an attorney who recommends a blind plea inherently fails to perform as required by the Sixth Amendment.  We merely say that under the circumstances present in this case, in which there is "a reasonable probability that ... [Esslinger] would not have pleaded guilty [to first degree rape] and would have insisted on going to trial," counsel's recommendation that his client enter a blind guilty plea constituted ineffective assistance of counsel.[48]

*Esslinger* is inapplicable to the present case because the Petitioner herein was correctly informed of the minimum penalties.

Further, in *Rhodes*, *supra*, on facts very similar to the present case, the Tenth Circuit rejected the argument that counsel was ineffective because he failed to conduct an independent investigation

---

[48]*Id.* at 1530 (quoting *Hill*, 474 U.S. at 58).

into his client's prior criminal history where the defendant failed to inform his counsel of his criminal history. The Tenth Circuit held:

> "The reasonableness of an attorney's decision not to conduct an investigation is directly related to the information the defendant has supplied." Rhodes faults his attorney for failing to conduct an independent investigation into his criminal history, but Rhodes, by his own admission, failed to inform counsel of five of his six prior criminal convictions. Although Rhodes testified that he had been drinking heavily at the time he spoke to his attorney, Rhodes does not contend that he gave his attorney any indication, based on his behavior or demeanor, which would have led his attorney to question the accuracy or completeness of his statements or to believe that an independent investigation was warranted. A claim of ineffective assistance of counsel cannot be charged "when the essential and foundational information required to trigger such an investigation is withheld from the defendant's attorney by the defendant himself."[49]

In this case, Petitioner proffers no reason why he did not tell his counsel about his criminal history. As in *Rhodes*, where "the essential and foundational information required to trigger such an investigation [was] withheld from [his] attorney by the [Petitioner] himself" Petitioner's claim that his counsel "failed to conduct an independent investigation into [his] criminal history does not rise to the level of ineffective assistance of counsel."[50]

### 3. *No Showing of Prejudice*

Even if Petitioner had shown counsel was ineffective for miscalculating the probable sentence or for failing to conduct an independent investigation of his criminal history, Petitioner fails to show prejudice. As noted above, in order to prevail on his claim of ineffective assistance,

---

[49]*Rhodes*, 913 F.2d at 844 (quoting *United States v. Miller*, 907 F.2d 994, 998 (10th Cir. 1990)) (further citation omitted).

[50]*Id.* at 846.

Petitioner must show that there was a reasonable probability that, but for counsel's alleged errors, he would not have pleaded guilty and would have insisted on going to trial.

As in *Rhodes*, Petitioner herein does not assert that he would have exercised his right to proceed to trial if counsel had accurately calculated his guideline range.  As in *Rhodes*, Petitioner herein admitted the factual basis of his plea and does not now assert that was not correct.  Instead, Petitioner argues that, as in *Esslinger*, the Court can find a "reasonable probability" that Petitioner would not have pleaded guilty and insisted on going to trial because, like *Esslinger*, Petitioner had "nothing to gain pleading and nothing to lose by going to trial."[51]

The Court finds no such probability can be implied from the facts of this case.  In this case, unlike *Esslinger*, Petitioner did have something to lose by going to trial.  If convicted at trial of only the one count he pleaded to, Petitioner would have lost the three-level adjustment for acceptance of responsibility, would have had the same criminal history, and the career offender enhancement would still have applied.  The loss of the three-levels for acceptance of responsibility would have resulted in a base offense level of 34 and a guideline range of 262-327 months, potentially adding six to seven-and-one-half years to his sentence.   By going to trial, Petitioner would have also lost the benefit of the dismissal of the second count.  At trial there would have also been the possibility of a conviction on the second count, potentially adding to a sentence.

There are no facts to suggest a reasonable probability that Petitioner would have exercised his right to go to trial had his counsel estimated that his potential sentence might include the career offender enhancement.

---

[51]Docket No. 9, at 5-6 (quoting *Esslinger*, 44 F.3d at 1530).

Further, in *United States v. Gordon*,[52] a direct appeal, the defendant argued his counsel was ineffective for allegedly failing to predict the relevant conduct inclusion in his offense level, an inclusion that added six levels to his base offense. The Tenth Circuit explained:

> A miscalculation or erroneous sentence estimation by defense counsel is not a constitutionally deficient performance rising to the level of ineffective assistance of counsel. Moreover, Defendant has failed to establish that he suffered prejudice from original counsel's inaccurate sentence prediction. Prior to accepting his guilty plea the district court explained that the court's final calculation of Defendant's sentence may differ from any calculation made by his attorney, and the court also explained that in computing Defendant's sentence, [the court could consider among other things, relevant conduct]. Given the fact that Defendant pleaded guilty even after being so informed by the court, his mere allegation that, but for original counsel's failure to inform him about the use of relevant conduct in sentencing, he would have insisted on going to trial, is insufficient to establish prejudice.[53]

This same rule was applied in *United States v. Herrera*,[54] a case under § 2255, where the counsel told the petitioner he faced 60 to 70 months' imprisonment under the plea agreement at the time of the plea. However, as in this case, when the PSR was issued, the petitioner learned for the first time that § 4B1.1's career-offender enhancement would likely apply. As in the present case, in *Hererra* neither counsel knew of the prior convictions prior to the PSR. Like Petitioner herein, the petitioner in *Herrera*, "of course, knew of his prior convictions, and he [did] not claim that he disclosed them to either his counsel or the government at any point prior to issuance of the PSR used by the district court."[55] Applying the career offender enhancement, the trial court sentenced Herrera

---

[52]4 F.3d 1567 (10th Cir. 1993).

[53]*Id.* at 1570-71.

[54]289 Fed. Appx. 302 (10th Cir. Aug. 13, 2006). The Court finds *Herrera*, an unpublished case, persuasive and factually similar.

[55]*Id.* at 304.

to 262 months, four times what his counsel had estimated.   The Tenth Circuit rejected the

ineffective assistance of counsel claim:

> [W]e have previously recognized that "[a] miscalculation or erroneous sentence estimation by defense counsel is not a constitutionally deficient performance rising to the level of ineffective assistance of counsel." This is particularly true here, where Herrera failed to advise counsel of facts necessary to arrive at an accurate Guidelines calculation. In addition, Herrera assented to a plea agreement that recognized that he faced a potential life sentence, and the plea agreement stated that the final sentence would be determined solely based on the district court's discretion.[56]

As in *Herrera*, Petitioner entered into the plea agreement after being informed that the Court

could not determine his sentencing guideline range until after the PSR had been compiled and that

the sentence imposed might be different from what he expected, and if it was more severe than he

expected, he would not be allowed to withdraw his plea.  Given the fact that Petitioner pleaded guilty

even after being so informed by the court, his conclusory assertion that, but for counsel's failure to

inform him about the possible career offender enhancement, there is a reasonable probability that

he would have insisted on going to trial, is insufficient to establish prejudice.[57]

Therefore, Petitioner's claims of ineffective assistance must fail.  Therefore, the Court must

find that Petitioner has not shown that enforcing the waiver will result in a miscarriage of justice.

Accordingly, the Court finds that Petitioner's plea of guilty and his collateral appeal waiver were

knowingly and voluntarily made and are enforceable.

---

[56]*Id*. at 304-05 (quoting *Gordon*, 4 F.3d at 1570-71).

[57]*Id.*

### III.   ADDITIONAL CONTENTIONS

Petitioner also contends that the plea agreement binds the government, and that an upward departure is unconstitutional.   The Court finds that these issues fall within the scope of the waiver of appellate rights.   The Court has determined above that Petitioner knowingly and voluntarily waived his appellate rights and that enforcing the waiver would not constitute a miscarriage of justice.   Therefore, collateral appeal of these issues is barred by the waiver.   Further, Petitioner's argument that plea agreement was violated when the government recommended 188 months was decided against him on direct appeal[58] and may not be re-raised here.

### IV.  CONCLUSION AND ORDER

Based upon the above, it is hereby

ORDERED that Petitioner's § 2255 Motion (Docket No. 1 ) is DENIED for the reasons set forth above.   It is further

ORDERED that Petitioner's Motion to Move for Summary Judgment (Docket No. 9) is DENIED.   It is further

ORDERED that, pursuant to Rule 8(a) of the Rules Governing § 2255 Cases, an evidentiary hearing is not required.

---

[58]*Nobel*, 175 Fed. Appx. at 191.

The Clerk of Court is directed to close Case No. 2:07-CV-158 TS forthwith.

SO ORDERED.

DATED April 27, 2009.

BY THE COURT:

_____
TED STEWART
United States District Judge